# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

JOHN MICHAEL BURKEY,

        Defendant.

Case No. 2:08-cr-00145-RCJ-PAL

**REPORT OF FINDINGS**
**AND RECOMMENDATION**

(M/Dismiss - Dkt. #23)

   This court held a hearing in this matter on January 16, 2009 on Defendant John Michael Burkey's ("Burkey") Motion to Dismiss Count II [sic] of the Indictment (Dkt. #23)[1] which was referred to the undersigned for findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rules IB 1-3 and IB 1-4.  The court has considered the Motion and the government's Response (Dkt. #24), Burkey's Reply (Dkt. #37), and the arguments of counsel at the hearing on the Motion.

## BACKGROUND

   The grand jury returned an indictment on May 15, 2008, charging Burkey with three counts: (a) failure to register as a sex offender in violation of 18 U.S.C. § 2250; (b) assault on a federal officer in violation of 18 U.S.C. § 111; and (c) resisting and opposing a federal officer in violation of 18 U.S.C. § 111.  18 U.S.C. § 2250(a) and (c) are part of the Sex Offender Registration and Notification Act ("SORNA" or the "Act"), which made it a federal felony offense for a sex offender who is required to register under SORNA to travel in interstate commerce and then fail to register.

/ / /

/ / /

---

[1]Defendant's Motion is incorrectly captioned–the Motion seeks dismissal of Count One of the Indictment (Failure to Register as a Sex Offender pursuant to 18 U.S.C. § 2250(a) and (c)) and not Count Two (Assault on a Federal Officer pursuant to 18 U.S.C. § 111).

**A.      Factual and Procedural Background**

Burkey was convicted of rape and aggravated burglary in Ohio in 1982.  In February 2000, Burkey was adjudicated a sexual offender pursuant to O.R.C. § 2950.09 and was advised in open court of his obligation to register as a sexual offender every ninety days for the rest of his life in any jurisdiction in which he resides.  Response at 2.  His life-long obligation to register was memorialized in a written order.  Id.  The government asserts, and Burkey does not dispute, that Burkey acknowledged his lifelong obligation to register as a sex offender every ninety days by signing a form entitled Explanation of Duties to Register as a Sex Offender on February 15, 2000.  In December 2001, Burkey was released from prison on parole, but in March 2002, Burkey was imprisoned again for a parole violation and released in December 2006.  The government asserts, and Burkey does not dispute that, upon his release from prison, Burkey again acknowledged his duty to register as a sex offender by signing another acknowledgment that he was required to register within five days of entering any Ohio county or any other state into which he traveled.  Id. at 3.  The notice advised Burkey that failure to comply with these obligations subjected him to criminal prosecution.  Id.   Burkey registered as a sex offender in Ohio pursuant to O.R.C. § 2950.09 until September 6, 2007.  Thereafter, on September 25, 2007, Defendant failed to report to his parole officer and was declared "absconded" from parole on September 27, 2007.  On October 10, 2007, Burkey was charged in Ohio for failure to register as a sex offender.

Burkey was arrested on March 7, 2008 by the United States Marshal's Service in Las Vegas, Nevada on a warrant issued by the Ohio court for Burkey's failure to register in Ohio.  Deputy U.S. Marshals conducted an investigation and learned that Burkey had moved to Las Vegas in November 2007 but had not registered as a sex offender in Nevada or any other state since last registering in Ohio in September 2007.  As a result of this investigation, Burkey was indicted for a violation of § 2250(a) for for traveling in interstate commerce and failing to register as a sex offender in Nevada as required by SORNA.

**B.      Burkey's Constitutional Challenge of the Indictment**

Burkey seeks to dismiss Count I of the Indictment, arguing that SORNA is unconstitutional on its face on nine different grounds.  Although Burkey also asserts an "as-applied" challenge in his

papers, at the hearing, counsel for Burkey withdrew that challenge, acknowledging that the issue was not ripe based upon the factual record. First, Burkey argues his prosecution under § 2250(a) violates his rights to due process because he was not on notice of his obligation to register, and he could not comply with SORNA's registration requirements because no state, including Nevada, had implemented a SORNA compliant registration system at the time of the alleged offense. Second, Burkey states that prosecution under § 2250(a) would violate his due process rights because he did not receive notice that he was required to register under SORNA. Third, Burkey asserts that Congress lacked the power under the Commerce Clause to enact the registration requirements contained in SORNA which requires persons convicted of sex offenses under state law to comply with the federal registration system. Fourth, assuming enactment of SORNA's registration requirements was a constitutional exercise of Congress' Commerce Clause authority, Burkey argues that § 2250(a) violates the Commerce Clause because it lacks a necessary jurisdictional element – namely, that the defendant travel in interstate commerce for the purpose of failing to register under SORNA. Fifth, application of SORNA's registration requirements violates the *Ex Post Facto* Clause of the Constitution for defendants, like Burkey, whose sex offenses were committed prior to the enactment of the SORNA. Sixth, SORNA violates Article I, §§ 1, 8 of the United States Constitution because Congress impermissibly delegated the authority to decide whether the statute applies retroactively to the Attorney General. Seventh, the Attorney General's interim rule which applies § 2250(a) retroactively to defendants like Burkey, whose convictions were sustained prior to the passage of SORNA, is invalid because the Attorney General did not comply with the notice and comment provisions of the Administrative Procedure Act. Eighth, § 2250(a) is an unconstitutional exercise of federal power over the states and, therefore, violates the Tenth Amendment. Finally, Burkey argues that SORNA infringes his constitutional right to travel in interstate commerce.

## DISCUSSION

### A.    Motion to Dismiss Standard of Review

A motion to dismiss challenges the sufficiency of an indictment to charge an offense. <u>United States v. Sampson</u>, 371 U.S. 75, 78-79 (1962). "An indictment is sufficient if it contains the elements of the charged crime and adequate detail to inform the defendant of the charge and to enable him to

1   plead double jeopardy." United States v. Buckley, 689 F.2d 893, 896 (9th Cir. 1982).  In determining

2   the sufficiency of the indictment, the court examines whether the indictment adequately alleges the

3   elements of the offense and fairly informs the defendant of the charge, and not whether the government

4   can prove its case. Id. at 897.  In deciding a motion to dismiss, the court must take the allegations of the

5   indictment as true. Boyce Motor Lines, Inc., v. United States, 342 U.S. 337, 343 n.16 (1952); United

6   States v. Afshari, 426 F.3d 1150, 1153 (9th Cir. 2005).  An indictment need not allege the

7   government's theory of the case or supporting evidence, but it must state the essential facts necessary to

8   apprise the defendant of the crime charged. Id.

9       Rule 12 of the Federal Rules of Criminal Procedure requires a defendant to challenge a

10  defective indictment prior to trial. See Fed. R. Crim. P. 12(b)(3)(A) and (B).  Rule 12(b)(2) permits a

11  party to raise "any defense, objection, or request that the court can determine without a trial of the

12  general issue." Id.  A pretrial motion is generally "capable of determination" before trial if it involves

13  questions of law rather than fact. United States v. Shortt Accountancy Corp., 785 F.2d 1448, 1452 (9th

14  Cir. 1986).  The trial court may make preliminary findings of fact necessary to decide the legal

15  questions presented by the motion, but it may not invade the province of the jury in deciding a pretrial

16  motion to dismiss.  It is also well established that "[a] motion to dismiss is not a proper way to raise a

17  defense." United States v. Snyder, 428 F.2d 520, 522 (9th Cir. 1970).

18  Count One of the indictment alleges Burkey violated 18 U.S.C. § 2250(a).  The essential

19  elements for a § 2250(a) offense require the government to prove: (i) the defendant is a sex offender as

20  defined by SORNA and, therefore, required to register under SORNA, 18 U.S.C. § 2250(a)(1);

21  (ii) federal jurisdiction exists either because the defendant was convicted as a sex offender under federal

22  law or because the defendant traveled in interstate or foreign commerce, 18 U.S.C. § 2250(a)(2)(A) and

23  (2)(B); and (iii) the defendant knowingly failed to register or update his sex offender registration as

24  required, 18 U.S.C. § 2250(a)(3); United States v. Hinen, 487 F. Supp. 2d 747, 750 (W.D. Va. 2007);

25  United States v. Samuels, 543 F. Supp. 2d 669, 673 (E.D. Ky. 2008).

26  Count One of the indictment alleges that between September 24, 2007 and March 7, 2008 in the

27  State and Federal District of Nevada, Burkey: (1) was a person who was required to register under

28  SORNA, (2) traveled in interstate commerce, and (3) knowingly failed to register and update a

registration as required by SORNA in violation of § 2250(a).  The government's theory in this case is that he traveled from Summit County, Ohio to Las Vegas, Nevada, between September 2007 and March 2008 and failed to register in Nevada as required by SORNA.  The indictment alleges the essential elements of the crime of failing to register as required under SORNA and provides adequate detail to inform Burkey of the charge to enable him to plead double jeopardy.  It is, therefore, sufficient.  However, Burkey challenges the constitutionality of the statute on its face.  This is a matter capable of determination before trial as a matter of law, rather than as a question of fact.  The court must, therefore, examine and decide Burkey's constitutional challenges to the statute under which he is charged.

**B.      Relevant Statutory Provisions**

**1.      Ohio Revised Code § 2950.09.**

The parties agree that Burkey was convicted of a sex offense in Ohio in 1982, sentenced to a term of imprisonment, and that when he was released from prison, he registered as a sex offender as required under Ohio Revised Code § 2950.09.  Ohio Revised Code § 2950.09 imposes a lifelong obligation on a sex offender to register with local law enforcement within five days of coming into a local jurisdiction and update the registration with any change of information within ten days or once a year if there are no changes.  A person convicted of a felony sex offense who fails to register under § 2950.09 is guilty of a felony punishable by imprisonment in the state prison for sixteen months, or two or three years.  Id.

**2.      Chapter 179D of the Nevada Revised Statutes**

In Nevada, Chapter 179D of the Nevada Revised Statutes ("N.R.S.") governs the registration of sex offenders and offenders convicted of a crime against a child.  Until July 1, 2008, individuals convicted of a crime against a child as defined by N.R.S. 179D.210 were required to register with a local law enforcement agency and with the Division of Parole and Probation of the Department of Motor Vehicles and Public Safety ("Division") if the offender resided in or was present for forty-eight hours or more in the jurisdiction of a local law enforcement agency.  See N.R.S. § 179D.240. N.R.S. 179D.250 required a sex offender to notify the Division of any change in address and provide updated information within forty-eight hours after changing an address, and N.R.S. 179D.270 required

1   a sex offender convicted of a crime against a child to comply with these registration provisions for at

2   least fifteen consecutive years.  Violation of the offender registration provisions for an offender

3   convicted of a crime against a child was a Category D felony punishable by a term of imprisonment for

4   a minimum term of not less than one year and a maximum term of four years and/or a fine of not more

5   than $10,000.  See N.R.S. 179D.290 and N.R.S. 193.130(2)(d).

6          N.R.S. 179D.460 required sex offenders convicted of a sexual offense as defined by

7   N.R.S. 179D.410 to register with local law enforcement agencies and the Division within forty-eight

8   hours after arriving or establishing residence in Nevada.  It also required sex offenders to notify the

9   Division of any change of address and update registration information, for at least fifteen consecutive

10  years after conviction.  Violation of the provisions of N.R.S. 179D.350 to 179D.550 was also a

11  Category D felony punishable from one to four years in prison and/or a fine of not more than $10,000.

12         In 2007, the Nevada legislature repealed, revised, and expanded the provisions of Chapter 179D

13  to conform to the provisions of the Federal Adam Walsh Child Protection and Safety Act of 2006 (the

14  "Walsh Act"), P.L. 109-248, 120 Stat. 587 (codified primarily in 42 U.S.C. §§ 16901-16962).  The

15  Nevada enactments were set to become effective July 1, 2008.  However, two lawsuits were filed

16  challenging certain of the new registration and community notification provisions passed by the Nevada

17  legislature to conform to the provisions of the Walsh Act.  On June 26, 2008, Nevada State District

18  Court Judge David Wall found that the registration and community notification requirements of

19  Assembly Bill 579 would result in significant and irreparable harm to the plaintiffs and other similarly

20  situated in Clark County, Nevada, and he granted a preliminary injunction restraining and enjoining

21  enforcement of these provisions.  The order set a briefing schedule and a hearing for arguments on the

22  plaintiff's complaint for declaratory relief.  See Order granting preliminary injunction in D.P.; WL

23  Plaintiffs v. State of Nevada, et al., Case No. A564966.

24         Additionally, on June 30, 2008, the Honorable James Mahan entered an injunction in this

25  federal district in ACLU of Nevada v. Masto, Case No. 2:08-cv-00822-JCM-PAL, enjoining

26  enforcement of certain provisions of the legislative changes and setting a briefing schedule and hearing

27  on constitutional challenges to the Nevada acts which were enacted to comply with the Walsh Act.

28  Judge Mahan granted a preliminary injunction following a hearing held on September 10, 2008, finding

certain provisions of the new laws violated the *Ex Post Facto* clause of the United States Constitution. On October 7, 2008, Judge Mahan entered a revised Order granting a permanent injunction (Dkt. #77), finding that the July 2007 legislative enactments of Assembly Bill 579 and Senate Bill 471, taken together, redefine who is considered a "sex offender," the way in which sex offenders are classified and monitored, and what restrictions apply to sex offenders.  He found that AB 579 and SB 471 do not provide any procedural due process protections for people who believe they have been miscategorized as sex offenders to challenge the application of AB 579 and SB 471.  He also found that the retroactive application of these bills is the equivalent of new punishment and, therefore, a violation of the *Ex Post Facto* and Double Jeopardy Clauses of the U.S. Constitution, as well as the Contracts Clauses of the U.S. and Nevada Constitutions.  Finally, he found that the bills violated the Due Process Clause of the U.S. Constitution.  For these reasons, he entered a permanent injunction enjoining the enforcement of AB 579 and SB 471.  The Attorney General filed a Notice of Appeal (Dkt. #83) on October 29, 2008. At oral argument, counsel for Morris asserted that Judge Mahan's order found the two state bills enacting Nevada's version of SORNA were unconstitutional on their face rather than as applied to the named plaintiffs.

### 3.    The Jacob Wetterling Act

The Jacob Wetterling Act was enacted by Congress in 1994 and is commonly referred to as "Megan's Laws."  See 42 U.S.C. § 14071.  The Jacob Wetterling Act provided federal funding to states that enacted sex offender registration laws.  It also created a federal misdemeanor failure to register offense punishable by up to one year imprisonment for sex offenders who failed to register in a state where they resided, worked, or were a student.  42 U.S.C. § 14072(i).  By 1996, all states had enacted Megan's Laws in some form.  See Smith v. Doe, 538 U.S. 84, 90 (2003).

### 4.    SORNA

Congress enacted the Walsh Act on July 27, 2006.  Title 1 of the Walsh Act contains SORNA and the federal failure to register as a sex offender statute.  See 18 U.S.C. § 2250(a).  The stated purpose of the Walsh Act is "[t]o protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child victims."  P.L. 109-248.  The stated purpose of SORNA is "to protect the public

1   from sex offenders and offenders against children" by establishing "a comprehensive national system"

2   for the registration of sex offenders.  42 U.S.C. § 16901.  "SORNA is essentially an effort by Congress

3   to close the loopholes in previous sex offender registration legislation and to standardize registration

4   across the states."  United States v. Ditomasso, 552 F. Supp. 2d 233 (D.R.I. 2008).

5         SORNA has provisions that apply to states and other provisions that apply to individuals.  The

6   Walsh Act applies to each state, the District of Columbia, native American tribal territories, and other

7   United States territories.  See § 16911(10), defining jurisdiction for purposes of the SORNA.  Each

8   jurisdiction has until July 27, 2009 to substantially comply with the requirements of SORNA or lose

9   part of its federal funding.  42 U.S.C. §§ 16924(a), 16925(a).  SORNA requires states to implement sex

10   offender registries which must include standard information and be compatible with a national

11   electronic data base.  42 U.S.C. §§ 16912, 16918, 16919.

12         In addition to establishing a national sex offender registration system, SORNA requires sex

13   offenders to "register, and keep the registration current, in each jurisdiction where the offender resides,

14   where the offender is an employee, and where the offender is a student."  42 U.S.C. § 16913(a).

15   SORNA defines the term "sex offender" as "an individual who was convicted of a sex offense" and

16   classifies all sex offenders into three different categories.  42 U.S.C. § 16911(1)-(4).  A "sex offense" is

17   "a criminal offense that has an element involving a sexual act or sexual contact with another."  Id.;

18   § 16911(5)(A)(I).  A sex offender must initially register before completing a period of imprisonment, or

19   not later than three business days after being sentenced if not sentenced to imprisonment.  42 U.S.C.

20   § 16913(b).  Under § 16913(b), a sex offender must initially register:

21              (1)    before completing a sentence of imprisonment with respect to the

22                      offense giving rise to the registration requirement; or

              (2)    not later than 3 business days after being sentenced for that offense,

23                      if the sex offender is not sentenced to a term of imprisonment.

24   Thereafter, a sex offender is required to keep his or her registration current by appearing in person in at

25   least one jurisdiction in which the sex offender is required to register and informing the registering

26   agency of any changes in personal information, such as a change of name, residence, or employment

27   status.  Id. at § 16913(c).  In the event of a change of name, residence, employment, or student status,

28   the sex offender must appear in person within three business days of the change in at least one

1  jurisdiction where the person resides, works, or is a student to update his registration information.

2  42 U.S.C. § 16913(c).

3       Section 16913(d) of SORNA delegates authority to the Attorney General of the United States to

4  specify the applicability of SORNA's requirements to sex offenders convicted before July 27, 2006

5  when SORNA took effect or its implementation in a particular jurisdiction and also to prescribe rules

6  for the registration of any sex offender unable to comply with the initial registration provisions of

7  SORNA.  § 16913(d) provides that:

8            (d)     Initial registration of sex offenders unable to comply with subsection
                     (b) of this section

9

10          The Attorney General shall have the authority to specify the applicability of
           the requirements of this subchapter to sex offenders convicted before July
           27, 2006 or its implementation in a particular jurisdiction, and to prescribe

11          rules for the registration of any such sex offenders and for other categories
           of sex offenders who are unable to comply with subsection (b) of this

12          section.

13       On February 28, 2007, the Attorney General promulgated an interim rule applying SORNA to

14  all sex offenders regardless of when they were convicted.  See Applicability of the Sex Offender

15  Registration and Notification Act, 72 Fed. Reg. 8894 (Feb. 28, 2007) (codified at 28 C.F.R. § 72

16  (2007)).  On May 30, 2007, the Department of Justice issued proposed guidelines for interpreting

17  SORNA, ("SMART Guidelines"), 72 Fed. Reg. 30,210 (May 30, 2007).  28 C.F.R. § 72.3.  SORNA

18  also created a new federal offense for failure to register, codified at 18 U.S.C. § 2250(a), which made

19  failure to register as a sex offender a felony and punishable with a maximum penalty of up to ten years

20  imprisonment and a $250,000 fine.  Section 2250(a) supersedes the Jacob Wetterling Act, which will be

21  repealed three years after SORNA's effective date.  42 U.S.C. § 14071, P.L. 109-248, Title I, § 129,

22  120 Stat. 600 (2006).

23      **C.**    **Burkey's Constitutional Challenges**

24       Burkey asserts various constitutional challenges to the following: (a) 42 U.S.C. § 16913, which

25  requires sex offenders convicted of state sex offenses to register under SORNA; and (b) 18 U.S.C.

26  § 2250(a), which makes it a federal felony offense to fail to register.  In general, statutes are presumed

27  constitutional.  United States v. Morrison, 529 U.S. 598, 608 (2000).  A facial challenge of a statute is

28  "the most difficult challenge to mount successfully."  United States v. Salerno, 481 U.S. 739, 745

1   (1987).  To prevail on a facial challenge to the constitutionality of a statute, a litigant must satisfy the

2   heavy burden of showing that "no set of circumstances exists under which the [a]ct would be valid."  Id.

3   (finding defendant had not met his heavy burden of establishing the Bail Reform Act was facially

4   unconstitutional).  It is not enough to show that an act "might operate unconstitutionally under some

5   conceivable set of circumstances."  Id.

6                    **1.    Due Process**

7          Burkey argues his prosecution under § 2250 violates the fair notice requirements of the Due

8   Process Clause of the Fifth Amendment.  Because no state has implemented SORNA, Burkey contends

9   he could not have been on notice of SORNA's registration requirements.  Citing United States v.

10  Dalton, 960 F.2d 121, 124 (10th Cir. 1992), he argues that it would violate the Due Process Clause to

11  prosecute him for failing to do something that is impossible to do.

12         The government responds by urging the court to follow the decisions of other courts which have

13  rejected substantive and procedural due process challenges to SORNA and other sex offender

14  registration laws.  The government cites United States v. Templeton, 2007 WL 445481 (W.D. Okla.

15  2007); Doe v. Moore, 410 F.3d 1337, 1345 (11th Cir. 2005); Doe v. Tandeske, 361 F.3d 594, 597 (9th

16  Cir. 2004); and Gunderson v. Hvass, 339 F.3d 639, 643 (8th Cir. 2003), as examples of cases in which

17  courts have rejected due process challenges to sex offender registration systems.   The government

18  acknowledges that portions of Nevada's state sex offender provisions that were intended to comply with

19  SORNA have been declared unconstitutional.  However, the government notes that no court has held

20  that the provisions of Nevada's prior sex offender registration statutes in effect at the time of the

21  conduct alleged in the indictment in this case have been held unconstitutional.  Further, the government

22  argues that Burkey was on notice of his duty to register since 2000 because the Ohio state court issued

23  an order requiring him to register for life every ninety days and within five days of arriving in any

24  county other than Summit County, Ohio.

25         In reply, Burkey relies on the Sentencing Commission's guidelines to support his argument that

26  no violation of SORNA can occur until a jurisdiction enacts a SORNA compliant registration statute.

27  He also claims that prosecution under § 2250 is improper because § 2250 does not punish a sex

28  offender for failing to register as required by *state law* and that failing to register as required by state

1   law is already prohibited by the Wetterling Act, 42 U.S.C. § 14072(i)(2).  Rather, § 2250 imposes

2   criminal penalties for failing to register "as required by [*SORNA*]," which Burkey claims is impossible

3   because no state has enacted SORNA.  18 U.S.C. § 2250(a) (emphasis added).  Additionally, Burkey

4   argues Nevada and Ohio registration laws do not put him on notice of SORNA's registration

5   requirements because SORNA's registration requirements and criminal penalties are more severe than

6   those in Nevada and Ohio.

7          He also relies on the sex offender SMART Guidelines issued by the Attorney General May 30,

8   2007.  The SMART Guidelines were promulgated by the Attorney General pursuant to SORNA's

9   direction that guidelines be provided to the states to "interpret and implement" SORNA's regulatory

10  scheme.  42 U.S.C. § 16912.  The SMART Guidelines contain a detailed discussion of how existing

11  state registries do not meet SORNA's registration standards, and thus Burkey argues that they confirm

12  that SORNA represents a regulatory scheme distinct from existing state sex offender registries.

13  SORNA's registration provisions are more onerous, and the penalties are more severe than the sex

14  offender registration systems enacted by Nevada or Ohio and, therefore, do not provide Burkey fair

15  notice of his SORNA obligations.

16         Burkey also argues his duty to register in Nevada cannot support a criminal prosecution under

17  § 2250(a) because the government has not alleged that he received notice of his requirement to register

18  as a sex offender under Nevada law.  He cites Lambert v. California, 355 U.S. 225 (1958) to support his

19  argument that he may not be prosecuted for failing to register unless he received actual knowledge of

20  the duty to register.  Finally, he cites the Rule of Lenity, which requires construction of an ambiguous

21  statute in favor of a defendant, claiming that he could not have foreseen that § 2250(a) required him to

22  register according to state law.

23         The Due Process Clause of the Fifth Amendment provides, "No person shall . . . be deprived of

24  life, liberty, or property, without due process of law."  Among other things, the Due Process Clause of

25  the Fifth Amendment safeguards the interest in fundamental fairness through notice and fair warning.

26  Rogers v. Tennessee, 532 U.S. 451, 460 (2001).  In Lambert, the Supreme Court held that a Los

27  Angeles felon registration ordinance violated the Due Process Clause of the Fourteenth Amendment

28  when applied to a person who had no actual knowledge of her duty to register.  Burkey cites Lambert to

11

support his arguments that he may not be prosecuted under § 2250(a) in the absence of proof he received actual knowledge of his duty to register under SORNA.  In <u>Lambert</u>, the Supreme Court recognized the deeply rooted principle of law that ignorance of the law is no excuse.  355 U.S. at 228 (1957).  However, the Court also recognized that the Due Process Clause of the Fourteenth Amendment places some limits on the exercise a local government's exercise of the police power.  The requirement of notice is inherent in the concept of due process and "is required in a myriad of situations where a penalty or forfeiture might be suffered for mere failure to act."  <u>Id</u>.  Thus, the Supreme Court held that the Due Process Clause of the Fourteenth Amendment required "actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply" before a conviction under the Los Angeles ordinance could be upheld consistently with due process.  <u>Id</u>. at 229.  The court concluded that the ordinance violated due process as applied because the defendant had no actual knowledge of the registration requirement, and the "circumstances which might move one to inquire as to the necessity of registration [were] completely lacking."  <u>Id</u>.

The vast majority of courts that have addressed due process challenges to a prosecution under SORNA have held that the Act does not violate a defendant's due process rights.  <u>See</u>, <u>e.g.</u>, <u>United States v. Lawrence</u>, 548 F.3d 1329, 1338 (8th Cir. 2008); <u>United States v. May</u>, 535 F.3d 912, 921 (8th Cir. 2008); <u>United States v. Hinkley</u>, 2008 U.S. App. LEXIS 24989 (10th Cir. Dec. 9, 2008); <u>United States v. Dixon</u>, 2008 U.S. App. LEXIS at *9 (8th Cir. Dec. 22, 2008); <u>Ditomasso</u>, 552 F.Supp.2d 233; <u>U.S. v. Gould</u>, 526 F.Supp.2d 538 (D. Md. 2007); <u>Hinen</u>, 487 F. Supp.2d 747 (W.D. Va. 2007); <u>U.S. v. LeTourneau</u>, 534 F.Supp.2d 718 (S.D. Tex. 2008); <u>Samuels</u>, 543 F.Supp.2d 669; <u>U.S. v. Lovejoy</u>, 516 F.Supp.2d 1032 (D.N.D. 2007); <u>United States v. Hann</u>, 574 F.Supp.2d 827,835-36 (M.D. Tenn. 2008); <u>United States v. Senogles</u>, 570 F.Supp.2d 1134, 1155-59 (D. Minn. 2008); <u>United States v. Waybright</u>, 561 F.Supp.2d 1154, 1173-74 (D. Mont. 2008); <u>United States v. Vardaro</u>, 575 F.Supp.2d 1179, 1186-87 (D. Mont. 2008); <u>United States v. Keleher</u>, 2008 U.S. Dist. LEXIS 105532 (E.D. Cal. Nov. 19, 2008); <u>United States v. Lamere</u>, 2008 U.S. Dist. LEXIS 101116 (N.D.N.Y. Dec. 15, 2008); <u>United States v. Summers</u>, 2008 U.S. Dist. LEXIS 101456 (D. Neb. Dec. 16, 2008); <u>United States v. Contreras</u>, 2008 U.S. Dist. LEXIS 102994 (W.D. Tex. Dec. 19, 2008).

/ / /

1    In Ditomasso, the court rejected due process arguments similar to those raised here by Burkey.

2    Ditomasso argued that charging him with violating § 2250(a) violated his due process rights to

3    fundamental fairness because it was impossible for him to comply with SORNA, as Rhode Island had

4    not yet implemented a SORNA complaint registry.  The court examined the language of § 2250(a) and

5    acknowledged that, at first blush, the argument was appealing because an element of the crime of not

6    registering is that the defendant "knowingly fails to register or update a registration as required by

7    [SORNA]."  However, on closer examination, the court concluded that the argument begs the question

8    of what SORNA requires.  The court concluded that the language of 42 U.S.C. § 16913(a) which

9    requires a sex offender to register and keep registration current in each jurisdiction where the offender

10    resides, where the offender is an employee, and where the offender is a student makes it clear that sex

11    offenders have a general obligation to register in their jurisdiction.  The court also concluded

12    the defendant was able to comply with SORNA's registration requirements because Rhode Island, like

13    every other state, had adopted Megan's Laws which require registration.

14    The Ditomasso decision recognized that SORNA does not specifically require sex offenders to

15    register under state law.  Addressing the defendant's argument that the statute was ambiguous, the court

16    concluded that "both the structure and purpose of the law show that Congress intended for sex

17    offenders to register in their states regardless of whether a state has fully implemented SORNA."

18    552 F.Supp.2d at 239.  The Ditomasso court carefully examined the Congressional Record in arriving at

19    its conclusion that Congress intended for sex offenders to register in their states regardless of whether

20    a state had fully implemented SORNA, finding that "any interpretation of § 2250 which allows a sex

21    offender to avoid registration in a state defies the structure and purpose of the law."  Id.

22    Similarly, the court in Hinen rejected a defendant's argument that SORNA violated his right to

23    procedural due process because he was not given actual notice that travel across state lines subjected

24    him to federal criminal penalties.  487 F.Supp.2d 747.  The court found that the fact that the defendant

25    may not have been advised of the specific requirements of SORNA did not constitute a due process

26    violation.  The court pointed out that since 1994, the Jacob Wetterling Act has required a sex offender

27    to register in his state of residence and any other state where he was employed, carried on a vocation, or

28    was a student.  See 42 U.S.C.A. § 14071(b).  The Jacob Wetterling Act also required sex offenders

13

1   registered in any state who move to another state to notify law enforcement authorities of their new

2   state of residence.  Id.  Because both the state where the defendant initially resided and the state where

3   he moved had sex offender registration requirements, the court concluded that "the defendant had

4   sufficient notice that failing to register as a sex offender was illegal."  Hinen, 487 F.Supp.2d at 754.

5       In LeTourneau, the court concluded the defendant had constitutionally adequate notice of his

6   duty to register as a sex offender because he was already under an obligation under state law to register

7   and update his registration if he moved to another state. 534 F.Supp.2d 718.  The defendant argued that

8   although he may have received notice of his obligation to register under state law, this was not

9   constitutionally adequate notice because he was entitled to notice of the more severe penalties imposed

10   by SORNA for failure to register.  The court rejected this argument, finding the defendant was aware

11   that failing to update his registration when moving to another state was a felony under state law.  The

12   court, therefore, held that his awareness that his failure to update his registration was a felony in the

13   state of his conviction qualifies as constitutionally effective notice under SORNA.

14       The court reached the same conclusion in Samuels. 543 F.Supp.2d 669.  There, the defendant

15   was convicted of a sex offense in New York in 1999 and was required to register as a sex offender for

16   ten years.  After he was released from prison on probation, he signed a New York state registration

17   form informing him of his duty to register as a sex offender if he moved to another state.  He moved to

18   Kentucky, failed to register, and was charged with violating § 2250(a).  It was undisputed that the

19   defendant received no notice of SORNA's registration requirements.  However, the court held that his

20   due process rights were not violated because he was on notice of his obligation under state law to

21   register and update registration and notified that if he moved to another state, he may be required to

22   register as a sex offender in his new state.

23       Finally, in Lovejoy, the court denied the defendant's motion to dismiss a criminal prosecution

24   under § 2250(a), finding the Due Process Clause did not require that the defendant receive actual notice

25   of SORNA's registration requirements.  516 F.Supp.2d 1032.  Because the defendant was fully aware

26   of his responsibility to register as a sex offender under state law, he had sufficient notice that failing to

27   register as a sex offender was illegal and "ignorance of the new, independent obligation under federal

28   law (SORNA) to register as a sex offender is simply no excuse."  Id. at 1038; see also Gould,

14

1  526 F. Supp.2d at 544 (defendant's prior knowledge of a duty to register under state law qualified as

2  effective notice under SORNA).

3  Burkey relies on Lambert to support his due process and lack of adequate notice arguments.  In

4  Lambert, the Supreme Court held that the defendant's conviction for failure to register as a felon

5  violated her due process rights because she received no prior notice of her duty to register. 335 U.S. at

6  229.  However, the Court assumed the defendant had no actual knowledge of her duty to register, and

7  there was no proof in the record that she probably received notice.  Id. at 227, 229.  Unlike Lambert,

8  Burkey is not a "person, wholly passive and unaware of any wrongdoing" who is charged in a criminal

9  case.  Upon his release from prison on parole, he registered as a sex offender under Ohio law and was

10  notified of and acknowledged his lifelong obligation to register and to update his registration.  The

11  Jacob Wetterling Act of 1994 also required Burkey to register as a sex offender in any state in which he

12  resided, worked, or was a student.  By 1996, after passage of the Jacob Wetterling Act, all fifty states

13  had enacted sex offender registration acts or Megan's Laws in some form.  Smith v. Doe, 538 U.S. at

14  90.

15  Burkey had sufficient notice that failure to register and update his registration was illegal under

16  SORNA because of the long-standing state registration laws in both Ohio and Nevada.  See May, 535

17  F.3d at 921 (finding defendant who admitted in plea agreement he had an obligation under state laws to

18  register and keep his registration current when moving between jurisdictions received "plenty of

19  information" about his registration obligations and, therefore, his due process rights were not violated);

20  see also United States v. Torres, 573 F.Supp.2d 925, 940-45 (holding that actual notice of SORNA's

21  federal registration requirements is not necessary and that knowledge of state reporting requirements is

22  sufficient to comport with the Due Process Clause) (collecting cases).

23  Additionally, since at least February 28, 2007, when the Attorney General promulgated an

24  interim rule applying SORNA to all sex offenders regardless of when they were registered, Burkey has

25  had constructive notice that his failure to register after traveling in interstate commerce was a violation

26  of § 2250(a) and a felony.

27  The court finds that Nevada's failure to enact a SORNA compliant registration system prior to

28  the time of Burkey's arrest does not preclude his prosecution for failing to register as a sex offender

15

1  under SORNA.  Sections 16913(a) makes SORNA's registration requirements applicable to all sex

2  offenders regardless of whether a state has implemented a SORNA compliant registration system.  The

3  language of § 2250(a) which imposes an obligation to register "as required by [SORNA]" does not

4  condition the duty to register on a state's implementation of SORNA.  For purposes of this motion,

5  Burkey does not dispute that he is a sex offender as defined by SORNA, *i.e.*, that he is an individual

6  who has been convicted of a sex offense or criminal offense that has an element involving a sexual act

7  or sexual contact with another.  See 42 U.S.C. § 16911(1)–(4) and § 16911(5)(A)(i).  Therefore, he was

8  required to comply with § 2250(a) by registering and updating his registration as described in § 16913,

9  which requires a sex offender to "appear in person . . . and inform that jurisdiction of all changes in the

10 information required for that offender in the sex offender registry."  42 U.S.C. § 16913(c).

11      Title 42 U.S.C. 16911 defines a "sex offender registry" as "a registry of sex offenders, and a

12 notification program maintained by a jurisdiction."  Therefore, the "sex offender registry" referred to in

13 § 16913 is the sex offender registry that a jurisdiction maintains, whether or not it complies with

14 SORNA.  The court concludes that § 2250(a) requires a sex offender who travels in interstate

15 commerce to register and update his sex offender registration.  Because every state has had a sex

16 offender registry since at least 1996 and because Burkey is alleged to have failed to register between

17 September 2007 and March 2008, it was not impossible for Burkey to register in Nevada as he claims.

18      In short, the court concurs with the Eighth Circuit and virtually every other United States

19 District Court which has addressed this issue and holds that actual notice of the federal requirement to

20 register under SORNA is not necessary for purposes of the Due Process Clause and that knowledge of

21 state reporting requirements suffices.  Nevada's failure to implement a SORNA compliant registration

22 system prior to Burkey's travel in interstate commerce does not preclude his prosecution for failing to

23 register as a sex offender under SORNA, and Burkey's prosecution for a violation of § 2250(a) does not

24 deprive him of his due process rights to fair notice.

25          **2.      Commerce Clause**

26      The United States Constitution creates a federal government of enumerated powers.  Article I,

27 § 8.  "Every law enacted by Congress must be based on one or more of its powers enumerated in the

28 Constitution."  Morrison, 529 U.S. at 607.  Powers not delegated to the United States by the

16

1   Constitution are reserved to the states.  U.S. Const. Amend. X.  The Constitution does not grant

2   Congress a plenary police power.  Id.; United States v. Lopez, 514 U.S. 549, 567 (1995).  Rather, the

3   general police power is reserved to the states.  Morrison, 529 U.S. at 607.  However, Article I, § 8, of

4   the Constitution grants Congress the power "to regulate commerce with foreign Nations, among the

5   several States, and with the Indian tribes."  U.S. Const. Art. I, § 8, Cl. 3.

6       Burkey argues that the registration requirements of § 16913 of SORNA, which requires sex

7   offenders convicted of state sex offenses to register under SORNA, and 18 U.S.C. § 2250(a), which

8   makes is a federal felony offense to fail to register are "unlawful and unauthorized exercises of

9   Congress' power."  He asserts Congress lacks the authority to direct individuals convicted of purely

10  state offenses to register as sex offenders, pointing out that SORNA creates affirmative duties for sex

11  offenders who have been convicted of state criminal laws even if their offense has no relation to

12  interstate activity or interstate commerce.  He also points out that the registration requirements of

13  SORNA are directed to individuals, not the states.  Because Congress lacks the authority to direct

14  individuals convicted of purely state offenses to register as sex offenders under SORNA, and because a

15  defendant may not be prosecuted for a violation of § 2250(a) unless he is first required to register under

16  the Sex Offender Registration Notification Act, Burkey contends § 2250(a) is an unconstitutional

17  exercise of Congress' Commerce Clause power.

18      The government responds that § 2250 is a valid exercise of Congress' Commerce Clause

19  authority because the statute regulates interstate travel and also regulates activities that substantially

20  affect interstate commerce.  Both sides rely heavily on the two most recent Supreme Court opinions

21  striking down statutes under the Commerce Clause – Lopez, 514 U.S. 549, and Morrison, 529 U.S. 598.

22      In Lopez, the Supreme Court held that the Gun-Free School Zones Act of 1990, 18 U.S.C.

23  § 922(q), which made it a federal offense for any individual to knowingly possess a firearm in a school

24  zone, exceeded Congress' Commerce Clause authority.  The Lopez decision emphasized the nature of

25  our federal system of government which limits the power of the federal government to those

26  enumerated in the Constitution and reserves all other powers to the states.  The court noted that

27  beginning in the mid-1930s, modern era Commerce Clause jurisprudence "greatly expanded the

28  previously defined authority of Congress under that Clause."  514 U.S. at 556.  Lopez summarized

1   Commerce Clause cases in which the Supreme Court identified three broad categories of activity that

2   Congress may regulate under its commerce power.  Congress may exercise its authority under the

3   Commerce Clause by regulating: (1) "the use of the channels of interstate commerce;" (2) "the

4   instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the

5   threat may come only from intrastate activities;" and (3) "activities that substantially affect interstate

6   commerce."  Id. at 558-559.

7        Lopez held that the Gun-Free School Zones Act of 1990: (1) did not regulate the use of the

8   channels of interstate commerce, (2) was not an attempt to prohibit the transportation of a commodity

9   through the channels of interstate commerce, and (3) was not a regulation in which Congress sought to

10  protect an instrumentality of interstate commerce.  Id. at 559.  The Court found the statute had nothing

11  to do with commerce, and it contained no jurisdictional element to ensure, through a case-by-case

12  inquiry, that the firearm possession in question affects interstate commerce.  Id. at 560-61.  The Court

13  rejected the government's argument that possession of a firearm in a school zone may result in violent

14  crime and that violent crime can be expected to affect the functioning of the national economy.  The

15  government reasoned that because the "costs of crime" has a national effect on the economy, Congress

16  could regulate not only all violent crime, but all activities that might lead to violent crime under its

17  Commerce Clause authority.  The Supreme Court noted that under this reasoning, "it is difficult to

18  perceive any limitation on federal power, even in areas such as criminal law enforcement or education

19  where States historically have been sovereign."  Id. at 564.  The Court concluded that to uphold the

20  government's position would essentially "convert congressional authority under the Commerce Clause

21  to a general police power of the sort retained by the states."  Id. at 567.

22        In Morrison, the Supreme Court held that § 13981 of the Violence Against Women Act

23  of 1994, which provided a federal civil remedy for victims of gender-motivated violence, was an

24  unconstitutional exercise of Congress' Commerce Clause power.  Relying on its earlier discussion in

25  Lopez, and acknowledging that modern Commerce Clause jurisprudence has expanded, the Court

26  nevertheless found Congress was not regulating any of the three broad categories of activity necessary

27  to the exercise of its Commerce Clause authority.  The court again rejected the notion that Congress

28  may regulate non-economic, violent criminal conduct based only on its aggregate effect on interstate

18

1   commerce, finding "the Constitution requires a distinction between what is truly national and what is

2   truly local." Id. at 617.  "The regulation and punishment of intrastate violence that is not directed at the

3   instrumentalities, channels, or goods involved in interstate commerce has always been the province of

4   the States." Id. at 618.

5          Burkey argues that the registration requirements of § 16913 of SORNA and § 2250(a) violate

6   the Commerce Clause.  With respect to § 16913, Burkey argues that SORNA's registration

7   requirements that persons convicted of state sex offenses register and keep their registration current

8   exceed Congress' Commerce Clause power because they do not regulate the channels of interstate

9   commerce, the instrumentalities of interstate commerce, or activities that substantially affect interstate

10  commerce.  The government does not address Burkey's arguments with respect to the registration

11  requirements of § 16913, but focuses its arguments on the constitutionality of § 2250(a), which the

12  government argues regulates persons who travel in interstate commerce and activities that substantially

13  affect interstate commerce.

14         Several Courts of Appeals to have decided a defendant's Commerce Clause challenge to

15  SORNA, and unanimously, all have rejected such challenges.  See, e.g., May, 535 F.3d at 921-22;

16  Hinkley, 2008 U.S. App. LEXIS 24989 at *37;  Dixon, 2008 U.S. App. LEXIS 26820 at * 8-9; United

17  States v. Howell, 2009 U.S. App. LEXIS 541 at *8 (8th Cir. Jan. 13, 2009).  In May, the Eighth Circuit

18  held that for a defendant to be convicted of failing to register under § 2250, the government must prove

19  he traveled in interstate or foreign commerce and thereafter failed to register as required by SORNA.

20  The Court of Appeals concluded that Congress had the power to enact SORNA under each of the three

21  prongs of the Lopez test, although it is "more easily supported by the first and second Lopez prongs."

22  The court distinguished both Morrison and Lopez because neither act contained a jurisdictional "hook,"

23  finding that SORNA had an express and clear jurisdictional element because it required proof that the

24  defendant traveled in interstate commerce or foreign commerce and thereafter failed to register as

25  required by SORNA.  May, 535 F.3d at 921-22.

26         Similarly, in Hinkley, the Tenth Circuit held that because Congress required a sex offender first

27  travel in interstate congress before finding a registration violation, SORNA was an appropriate use of

28  Congress' power under the Commerce Clause.  The Tenth Circuit did not believe that analysis under

19

1   the third <u>Lopez</u> prong was necessary because "[the defendant's] travel across state lines...falls under the

2   first or second of the <u>Lopez</u> prong, [and therefore,] whether such activity has a substantial effect on

3   interstate commerce is irrelevant."  2008 U.S. Dist. LEXIS 24989 at * 38-39.

4        Additionally, the overwhelming majority of district courts have held that SORNA is a valid

5   exercise of Congress' Commerce Clause power because it regulates persons in interstate commerce.

6   <u>Hinen</u>, 487 F. Supp. 2d 747; <u>United States v. Madera</u>, 474 F. Supp.2d 1257 (M.D. Fla. 2007), <u>rev'd on

7   other grounds</u>, 528 F.3d 852 (11th Cir. 2008); <u>United States v. Kelton</u>, 2007 WL 2572204 (M.D. Fla.

8   2007); <u>United States v. Sawn</u>, 2007 WL 2344980 (W.D. Va. 2007); <u>United States v. Gonzales</u>, 2007

9   WL 2298004 (N.D. Fla. 2007); <u>United States v. Mason</u>, 510 F.Supp.2d 923 (M.D. Fla. 2007); <u>United

10  States v. Templeton</u>, 2007 WL 445481 (W.D. Okla. 2007); <u>Lovejoy</u>, 516 F. Supp. 2d 1032; <u>Ditomasso</u>,

11  552 F. Supp. 2d 233; <u>United States v. Howell</u>, 2007 WL 3302547 (N.D. Iowa 2007), report and

12  recommendation adopted in part, rejected in part, 2008 WL 313200; <u>Gould</u>, 526 F. Supp. 2d 538;

13  <u>United States v. Tonj</u>, 2008 WL 2186205 (E.D. Okla. 2008); <u>United States v. David</u>, 2008 WL 2045830

14  (W.D.N.C. 2008); <u>United States v. Zuniga</u>, 2008 WL 2184118 (D. Neb. 2008); <u>United States v.

15  Cochran</u>, 2008 WL 2185427 (E.D. Okla. 2008); <u>United States v. Utesch</u>, 2008 WL 656066 (E.D. Tenn.

16  2008); <u>United States v. Akers</u>, 2008 WL 914493 (N.D. Ind. 2008); <u>United States v. Nugent</u>, 2008 WL

17  413273 (W.D. Mo. 2008); <u>United States v. Shenandoah</u>, 572 F.Supp.2d 566 (M.D. Pa. 2008); <u>Torres</u>,

18  573 F. Supp. 2d 925, 940; <u>Hann</u>, 573 F. Supp. 2d 827, 835.  This list of district court cases is not

19  exhaustive.

20        Burkey argues that the government cannot establish the first element of a § 2250(a) violation,

21  <i>i.e.</i>, that he was required to register under SORNA because Congress lacks the power under the

22  Commerce Clause to impose registration requirements on individuals who are convicted of purely

23  intrastate offenses.  Burkey also argues that SORNA's registration provision, § 16913, is a an invalid

24  exercise of Commerce Clause power because Congress cannot require individuals who are convicted of

25  purely state law offenses to register under SORNA.  Four district court cases have held that Congress

26  exceeded its Commerce Clause authority in enacting § 16913, the registration provision of SORNA.

27  <u>Waybright</u>, 561 F. Supp. 2d at 1162-68; <u>Powers</u>, 544 F. Supp. 2d at 1333-36; <u>Thomas</u>, 534 F. Supp. 2d

28  at 917-22; <u>United States v. Myers</u>, 2008 WL 5156671, __ F.Supp.2d __ (S.D. Fla. Dec. 9. 2008).

1   However, each of these decisions analyzed the registration provisions of § 16913 and criminal penalty

2   provision of § 2250(a) of SORNA separately.  Moreover, each analyzed SORNA under the first two

3   prongs of Lopez and found SORNA unconstitutional because there was no relationship between the

4   interstate travel and the regulated activity.  The majority of courts have rejected this approach, finding

5   that both § 16913 and § 2250(a) are interrelated parts of the same Act.  Shenandoah, 572 F.Supp.2d at

6   575 (holding the provisions of § 16913 and § 2250 "are components of a symbiotic statutory scheme in

7   which there is no criminal penalty unless there is a failure to register, and conversely, a failure to

8   register cannot be enforced without a criminal penalty"); Hann, 573 F. Supp. 2d 925 (holding § 16913

9   and § 2250 should be treated as "interrelated components of the larger whole of SORNA sufficient to

10  overcome any deficiencies when viewing § 16913 in isolation."); Vardaro, 575 F. Supp. 2d 1179, 1185;

11  Shenandoah, 575 F. Supp. 2d at 576 (finding congressional intent underlying SORNA was to protect

12  public safety by creating a mechanism for tracking sex offenders as they move from state to state and

13  that prosecution under § 2250 does not reach purely intrastate movement of sex offenders who fail to

14  comply with registration requirements); Hinen, 487 F.Supp.2d at 757-58 (holding federal jurisdiction

15  for violating § 2250 only occurs when a person required to register under SORNA travels in interstate

16  commerce).

17       Additionally, a number of cases have held that § 16913 is an appropriate exercise of Congress'

18  power under the Necessary and Proper Clause.  Thomas, 534 F.Supp.2d at 921 (concluding that

19  § 16913 is an appropriate and reasonably adapted means by Congress to attain the legitimate end of

20  § 2250, i.e., monitoring sex offenders who cross state lines); Torres, 573 F.Supp.2d at 940 (W.D. Tex.

21  2008) (holding § 16913 is a valid exercise of authority under the Necessary and Proper Clause);

22  Vardaro, 572 F.Supp.2d at 576.

23       In short, the court concurs with the overwhelming majority of cases which have held that

24  SORNA is a valid exercise of Congress' Commerce Clause power.  Section 2250(a)(2)(B) regulates

25  persons who travel in interstate commerce and fail to register.  Although Congress has encouraged

26  states to enact SORNA compliant registration provisions, § 2250(a)(2)(B) is expressly limited to

27  prosecuting those individuals who have traveled in interstate commerce.  As such, prosecution under

28  § 2250(a)(2)(B) does not criminalize purely intrastate movement of sex offenders who fail to comply

1   with SORNA's registration requirements.  SORNA contains an express jurisdictional element that

2   limits prosecutions to those who fail to register after traveling in interstate commerce.  Under the

3   second prong of the <u>Lopez</u> test, Congress may regulate persons who move in interstate commerce "even

4   though the threat may come from only intrastate activities."  514 U.S. at 558.  There is no constitutional

5   requirement under the second prong of the <u>Lopez</u> test that the person who travels in interstate

6   commerce must travel with the intent of violating a specific statute.  <u>Torres</u>, 573 F.Supp.2d at 940;

7   <u>Ditomasso</u>, 552 F.Supp.2d 243.  As the <u>Ditomasso</u> court found, "SORNA, including the criminal

8   component, prevents sex offenders from being lost in the cracks *between* state regulation, a matter

9   which is beyond the power of any one state to comprehensively address."  <u>Id.</u> (emphasis in original).

10  <u>See</u> also <u>Vardaro</u>, 575 F. Supp. 2d 1185 ("the threat posed by sex offenders traveling in interstate

11  commerce is precisely the type of peril that Congress may address utilizing the Commerce Clause").

12          **3.      *Ex Post Facto* Clause**

13                   **SORNA's Registration Requirements**

14          Article I, § 9 of the Constitution prohibits the passage of *Ex Post Facto* laws.  "'[A]ny statute

15  which punishes as a crime an act previously committed, which was innocent when done; which makes

16  more burdensome the punishment for a crime, after its commission, or which deprives one charged with

17  crime of any defense available according to law at the time when the act was committed, is prohibited

18  as *ex post facto*.'"  <u>Collins v. Youngblood</u>, 497 U.S. 37, 42 (1990) (quoting <u>Beazell v. Ohio</u>, 269 U.S.

19  167, 169-70 (1925)).  "[T]he constitutional prohibition on ex post facto laws applies only to penal

20  statutes which disadvantage the offender affected by them."  <u>Collins</u>, 497 U.S. at 41 (citations omitted).

21  To determine whether a law violates the *Ex Post Facto* Clause, the court applies a two-step test.  The

22  court must first decide whether the intent of the legislature in enacting the statute was to impose

23  punishment.  <u>Doe v. Smith</u>, 538 U.S. at 92.  If so, the court's analysis ends because retroactive

24  application of a statute violates the *Ex Post Facto* Clause.  <u>Id.</u>  However, if the intent of the legislature

25  was to enact a nonpunitive and civil regulatory scheme, the court conducts the second step of the

26  analysis and decides whether the statute is so punitive either in purpose or effect as to negate the

27  legislature's intention to make it civil.  <u>Id.</u>  As the Supreme Court explained, "Because we ordinarily

28  defer to the legislature's stated intent, only the clearest proof will suffice to override legislative intent

1   and transform what has been denominated a civil remedy into a criminal penalty." Id. (internal citations

2   and quotations omitted.)

3        Burkey contends SORNA violates the *Ex Post Facto* Clause because the statute's in-person

4   reporting requirements are punitive, and its categorical monitoring mechanisms are excessive compared

5   to the stated objective of public safety.  The government claims SORNA is a non-punitive civil

6   regulatory scheme similar to the sex offender registration system the Supreme Court upheld Smith v.

7   Doe.  The government also argues the in-person reporting requirements promote the statutory objective

8   of maintaining current and accurate information on sex offenders.  Finally, the government asserts

9   SORNA does not punish or increase punishment of an act committed before SORNA's enactment or

10  deprive Burkey of a defense previously available.

11       In Doe v. Smith, the Supreme Court held that courts analyzing whether sex offender registration

12  statutes violate the *Ex Post Facto* Clause should refer to the seven factor test set forth in the court's

13  prior decision in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963).  Those factors are:

14  (1) whether the sanction involves an affirmative disability or restraint; (2) whether the sanction has

15  historically been regarded as punishment; (3) whether the sanction comes into play only on a finding of

16  *scienter*; (4) whether the sanction's operation will promote the traditional aims of punishment –

17  retribution and deterrence; (5) whether the behavior to which the sanction applies is already a crime;

18  (6) whether an alternative purpose to which the sanction rationally may be connected is assignable to it;

19  and (7) whether the sanction appears excessive in relation to the alternative purpose assigned.  Id. at

20  168-69.  Analyzing each of these factors, the Supreme Court held that Alaska's Sex Offender

21  Registration Act did not violate the *Ex Post Facto* Clause of the Constitution.  Of the seven Mendoza-

22  Martinez factors,

23
24        The factors most relevant to our analysis are whether, in its necessary operation, the regulatory scheme: has been regarded in our history and tradition as punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a
25  nonpunitive purpose; or is excessive with respect to this purpose.

26       Virtually every court to have addressed a defendant's *ex post facto* challenge to SORNA has

27  held that SORNA does not violate the *Ex Post Facto* Clause of the Constitution.  May, 535 F.3d at

28  919-20; Hinkley, 2008 U.S. App. LEXIS at *26; Mason, 510 F.Supp.2d at 929-30; United States v.

23

1   Gill, 520 F.Supp.2d 1341, 1344-46; Hinen, 487 F.Supp.2d at 755-57; Samuels, 543 F.Supp.2d at 676-

2   77; Ditomasso, 552 F.Supp.2d 233; United States v. Senogles, 570 F. Supp. 2d at 1152-55; Torres, 573

3   F.Supp.2d at 950 (W.D. Tex. 2008); Shenandoah, 572 F.Supp.2d 566.  But see Dixon, 2008 U.S. App.

4   LEXIS at 26820 * 11 (finding no violation where defendant traveled after SORNA enacted and given

5   reasonable time (there, five months) to register, but violation occurred regarding second defendant who

6   was not given reasonable time to register before he was indicted for failure to register).

7           This court agrees that SORNA does not violate the *Ex Post Facto* Clause.  First, Congress'

8   stated intent in enacting SORNA was regulatory rather than punitive.  Congress stated that its purpose

9   was to "protect the public from sex offenders and offenders against children, and in response to the

10  vicious attacks by violent predators."  42 U.S.C. § 16901.  To accomplish this purpose, Congress

11  established a comprehensive national system for regulation of sex offenders.  As the Eighth Circuit has

12  concluded, "SORNA's registration requirement demonstrates no congressional intent to punish sex

13  offenders.  Congress describes SORNA as a public safety measure."  May, 535 F.3d at 920 (citing

14  § 16901).  Additionally, except for the criminal provision contained in § 2250, the entire statute is

15  codified within Title 42 of the United States Code, which is devoted to "Public Health and Welfare,"

16  which is additional evidence of Congress' intent to create a civil regulatory statute.  Moreover, as the

17  Supreme Court noted in Doe v. Smith, "[I]mposition of restrictive measures on sex offenders adjudged

18  to be dangerous is a legitimate nonpunitive governmental objective and has been historically so

19  regarded."  538 U.S. at 93 (internal quotations omitted).  Thus, it is clear that Congress intended

20  SORNA to be a civil regulatory scheme to protect the public from sex offenders and offenders against

21  children.

22          Turning to the second prong of the framework established by the Supreme Court in Doe v.

23  Smith, the court also concludes that SORNA's statutory scheme is not so punitive either in its purpose

24  or effect as to negate Congress' intention to deem it civil.  Burkey focuses on SORNA's in-person

25  reporting requirements because the Supreme Court in Doe v. Smith reversed the Ninth Circuit based in

26  part on the Court of Appeals' mistaken belief that the Alaska statute required in-person updates.  The

27  Ninth Circuit had pointed to numerous elements of the Alaska statute – the apparent in-person

28  requirements, the disclosure of a wide variety of personal information, the publishing of the offender's

1  information on the internet, and the impact on an offender's ability to obtain employment – to conclude

2  that the Alaska statute imposed an affirmative disability on sex offenders.  In reversing the Ninth

3  Circuit, the Supreme Court found that the Alaska statute did not require in-person reporting and that the

4  other aspects of the statute did not impose an affirmative disability.  Burkey seems to argue that the

5  Ninth Circuit's decision in Doe v. Smith is still good law on the issue of whether an in-person reporting

6  requirement of a sex offender registration statute constitutes an affirmative disability for purposes of *ex*

7  *post facto* analysis.  However, in Hatton v. Bonner, 356 F.3d 955, 964 (9th Cir. 2004), the Ninth Circuit

8  held that California Penal Code § 290, California's sex offender registration statute, did not violate the

9  *Ex Post Facto* Clause.  Applying the seven factor Mendoza-Martinez test, the court found that the in-

10  person registration requirement was not enough, in it self, to turn § 290 into an affirmative disability or

11  restraint. Id.

12      The in-person reporting requirements of SORNA do not make § 16913 punitive in purpose or

13  effect.  Rather, SORNA's in-person reporting requirements, which require sex offenders to provide

14  detailed personal information and appear in person so that the jurisdiction can take a current photograph

15  and verify reportable information, accomplish the statute's purpose of establishing a comprehensive

16  national system for registration.  These requirements do not impose an affirmative restraint on sex

17  offenders' activities.  SORNA's registration requirements do not prevent sex offenders from traveling

18  in interstate commerce, changing residences, or changing their appearance.

19      Burkey also claims SORNA's categorical monitoring mechanisms are excessive compared to

20  the stated objective of public safety.  However, the Supreme Court in Doe v. Smith rejected the same

21  argument:

22          The *Ex Post Facto* Clause does not preclude a State from making reasonable
            categorical judgments that conviction of specified crimes should entail
23          particular regulatory consequences.  We have upheld against ex post facto
            challenges laws imposing regulatory burdens on individuals convicted of
24          crimes without any corresponding risk assessment. The State's determination
            to legislate with respect to convicted sex offenders as a class, rather than
25          require individual determination of their dangerousness, does not make the
            statute a punishment under the *Ex Post Facto* Clause.
26

27  538 U.S. at 103-104.  The Supreme Court held that Alaska's categorical classification of sex offenders

28  / / /

1    was justified considering the "grave concerns over the high rate of recidivism among convicted sex

2    offenders and their dangerousness as a class." Id. at 103.

3            Burkey argues that his prosecution under § 2250 violates the *Ex Post Facto* Clause because the

4    penalties under § 2250 (up to ten years in prison) are greater than the state penalties (up to sixteen

5    months in Ohio and up to four years in Nevada) and the federal penalties (up to one year under the

6    Wetterling Act) which were in effect at the time of his conduct.  However, § 2250(a)(2)(B) only

7    punishes convicted sex offenders who travel in interstate commerce after the enactment of SORNA and

8    who fail to register or update registration as required by SORNA.  Section 2250(a)(2)(B) does not

9    impose additional punishment for Burkey's underlying sex offense.  Rather, SORNA creates a new

10   punishment for a new offense of failing to register as a sex offender under SORNA after July 27, 2006

11   when SORNA became effective.  See LeTourneau, 534 F.Supp.2d at 720-22 ("SORNA does not punish

12   a defendant for the sexual offense committed prior to the enactment of SORNA, but rather traveling in

13   interstate commerce and failing to register after SORNA became effective." ); Gould, 526 F.Supp.2d at

14   548-49 ("[O]nly upon an offender's failure to register under SORNA, a new offense, do the enhanced

15   penalties apply."); Shenandoah, 572 F.Supp.2d at 569 ("SORNA does not impose an additional

16   punishment for a predicate sex offense.  Instead, SORNA works prospectively creating a new

17   punishment for a new offense, *i.e.*, failing to register as a sex offender under SORNA after July 27,

18   2006.") (internal citations and quotations omitted).

19           In summary, the court concludes that because Congress' intent was to create a civil regulatory

20   scheme and because SORNA's purpose and effects are nonpunitive, the statute does not violate the *Ex*

21   *Post Facto* Clause.

22                   **4.    Retroactivity**

23           Burkey claims § 2250 is impermissibly retroactive because Congress did not properly designate

24   § 2250 as retroactive.  The government asserts that SORNA is similar to the retroactive registration

25   system in Alaska that the Supreme Court upheld in Smith v. Doe.  There is split of authority concerning

26   whether a sex offender who traveled in interstate commerce during the "gap" between the effective date

27   of SORNA and the interim Attorney General's rule applying SORNA retroactively violates the *Ex Post*

28   *Facto* Clause.  Some courts have held that it would violate the *Ex Post Facto* Clause of the Constitution

26

1   to prosecute a defendant who traveled in interstate commerce during the gap between SORNA's

2   enactment and the Attorney General's interim rule.  See, e.g., Madera, 528 F.3d 852; Natividad-Garcia,

3   560 F.Supp.2d at 565.  Other courts have rejected the arguments that the *Ex Post Facto* Clause prohibits

4   prosecution of a defendant who travels in interstate commerce during the "gap," reasoning sex

5   offenders were required to register under SORNA when SORNA came into effect on July 27, 2006.

6   See, e.g., May, 535 F.3d 912; Ditomasso, 552 F.Supp.2d 233.

7        The indictment in this case alleges that Burkey traveled in interstate commerce and knowingly

8   failed to register and update his registration between September 24, 2007 and March 7, 2008.  The court

9   finds the reasoning of the Eighth Circuit, and those courts which have held that SORNA's registration

10  requirements apply to all sex offenders, as defined by the Act regardless of when they were convicted,

11  persuasive.  However, because the indictment alleges a violation of § 2250 occurred well after

12  enactment of SORNA, and also well after the enactment of the Attorney General's interim rule, Burkey

13  has not satisfied his heavy burden of showing that "no set of circumstances exist under which the Act

14  would be valid."  Morrison, 529 U.S. at 608.

15                    **5.    Non-Delegation Doctrine**

16        Burkey also argues SORNA violates the non-delegation doctrine by delegating legislative

17  authority to the Attorney General.  He claims 42 U.S.C. § 16913(d) gives the Attorney General the

18  legislative authority to determine the applicability of SORNA to all sex offenders convicted before

19  its enactment.  Citing Hinen, 487 F.Supp.2d at 753, the government argues that § 16913(d) only gives

20  the Attorney General the authority to determine the statute's applicability to individuals who are

21  classified as sex offenders under SORNA who are unable to register in the jurisdiction where they

22  reside, work, or study.  The government also urges the court to adopt the view of the district court in

23  Madera, which held that SORNA merely gives the Attorney General an advisory role to the courts, with

24  the courts ultimately determining the retroactive reach of SORNA.  474 F.Supp.2d at 1261.  However,

25  the Eleventh Circuit reversed the District Judge, finding he "clearly erred by usurping the role of the

26  Attorney General in preemptively determining SORNA's retroactive application."  Madera, 528 F.3d at

27  857.

28  ///

                                27

1    Under the non-delegation doctrine, "Congress may not constitutionally delegate its legislative

2 power to another branch of Government." Touby v. United States, 500 U.S. 160, 165 (1991). "The

3 nondelegation doctrine is rooted in the principle of separation of powers that underlies our tripartite

4 system of Government." Id. (internal quotations omitted). However, Congress may seek assistance

5 from other branches:

6

7    We have long recognized that the nondelegation doctrine does not prevent
     Congress from seeking assistance, within proper limits, from its coordinate

8    Branches. Thus, Congress does not violate the Constitution merely because
     it legislates in broad terms, leaving a certain degree of discretion to executive

9    or judicial actors. So long as Congress lay[s] down by legislative act an
     intelligible principle to which the person or body authorized to [act] is

10   directed to conform, such legislative action is not a forbidden delegation of
     legislative power.

11

12 Touby, 500 U.S. at 165 (internal quotations omitted).

13    In the past eighty years, the Supreme Court has only found that Congress impermissibly

14 delegated its legislative authority in two cases, both related to provisions in the National Industrial

15 Recovery Act ("NIRA"). See Panama Refining Co. v. Ryan, 293 U.S. 388 (1935); A.L.A. Schechter

16 Poultry Corp. v. United States, 295 U.S. 495 (1935).

17    Consistent with virtually every other court to address this issue, the court finds that Congress

18 did not unconstitutionally delegate its legislative powers to the Attorney General, and that SORNA does

19 not violate the non-delegation doctrine. See, e.g., Torres, 573 F.Supp.2d 925, 949 (W.D. Tex. 2008);

20 LeTourneau, 534 F.Supp.2d at 724-25; Gould, 526 F.Supp.2d at 545-46 (collecting cases); Hinen,

21 487 F.Supp.2d at 751-53; United States v. Romeo, 2009 U.S. Dist. LEXIS 3522 at *15 (Jan. 20, 2009);

22 Contreras, 2008 U.S. Dist. LEXIS at *21; Summers, 2008 U.S. Dist LEXIS 101456 at *11; Lamere,

23 2008 U.S. Dist. LEXIS 101116 at *11; Morris, 2008 U.S. Dist. LEXIS 104029 at *28-32; Keleher,

24 2008 U.S. Dist. LEXIS 105532 at *35-46. The court finds that Congress provided an intelligible

25 principle to guide the Attorney General. Section 16913 allows the Attorney General to determine the

26 applicability of SORNA to sex offenders convicted before its implementation on July 27, 2006 and to

27 prescribe rules for sex offenders who are unable to initially register. Congress set forth all of SORNA's

28 substantive registration requirements in §§ 16911 et seq., and § 16913(d) merely gives the Attorney

28

1    General the authority to specify the applicability of SORNA to a certain class of individuals.[2]  The

2    Attorney General's discretion in this regard is constrained by the principles expressed in SORNA,

3    which seeks to create a comprehensive national system for the registration of sex offenders.  Moreover,

4    the applicability of SORNA to the class of individuals described in § 16913(d) is ultimately determined

5    by the courts.  Thus, SORNA does not violate the non-delegation doctrine.

6                              **6.    Administrative Procedure Act**

7            Burkey contends the Attorney General's interim rule violates the Administrative Procedure Act

8    ("APA") because the rule was promulgated without notice and comment procedures, and no exception

9    applies.  According to Burkey, no good cause exists to waive notice and comment under 5 U.S.C.

10   § 553(b) because notice and comment procedures were not "impracticable, unnecessary, or contrary to

11   the public interest," 5 U.S.C. §553(b)(3)(B), and the rule did not confer a benefit to allow delaying

12   implementation of the rule under § 553(d).  In response, the government argues the Attorney General

13   complied with the APA by incorporating into the interim rule a finding that notice and comment

14   procedures would be contrary to the public interest because the interim regulation eliminated

15   uncertainty about the applicability of SORNA's requirements and protected the public against sex

16   offenders.

17           The court finds that the Attorney General has properly invoked the good cause exception to

18   notice and comment rulemaking.  Under the APA, notice and comment procedures are required before

19   promulgating a rule unless an exception applies.  5 U.S.C. § 553.  A finding of good cause is an

20   exception to the Notice and comment requirements of the APA:

21

22                    (B)    when the agency for good cause finds (and incorporates the finding
                            and a brief statement of reasons therefor in the rules issued) that

23

24           [2]  Courts are split concerning whether § 16913(d) only delegates to the Attorney General

25   authority to regulate initial registration or registration in general for sex offenders convicted prior to
     SORNA.  Some courts have held that Subsection (d) only refers to initial registration.  See, e.g., Mason,

26   510 F.Supp.2d at 928; Hinen, 487 F.Supp.2d at 750-51.  Other courts hold that SORNA does not apply
     to sex offenders convicted before the Attorney General issued his interim rule on February 28, 2007.

27   See, e.g., United States v. Smith, 528 F. Supp. 2d 615, 618 (S.D.W. Va. 2007); United States v. Kapp,

28   487 F. Supp. 2d 536, 542 (M.D. Pa. 2007).

1   notice and public procedure thereon are impracticable, unnecessary, or
    contrary to the public interest.

2

3   5 U.S.C. § 553(b)(B).

4          Under 5 U.S.C. § 553(d),

5          (d)    The required publication or service of a substantive rule shall be
                  made not less than 30 days before its effective date, except–

6

7                 (1)    a substantive rule which grants or recognizes an
                         exemption or relieves a restriction;

8                 (2)    interpretative rules and statements of policy; or

9                 (3)    as otherwise provided by the agency for good cause found
                         and published with the rule.

10  Id.

11         "[T]he good cause exception should be interpreted narrowly . . . so that the exception will not

12  swallow the rule." Buschmann v. Schweiker, 676 F.2d 352, 357 (9th Cir. 1982) (citations omitted).

13  The court's inquiry into whether the good cause exception was properly invoked "proceeds case-by-

14  case, sensitive to the totality of the factors at play, and . . . notice and comment procedures should be

15  waived only when 'delay would do real harm.'" Natural Resources Def. Council, Inc. v. Evans,

16  316 F.3d 904, 911 (9th Cir. 2002) (citations omitted) (quoting Hawaii Helicopter Operators Ass'n v.

17  Fed. Aviation Admin., 51 F.3d 212, 214 (9th Cir. 1995)).  While emergencies are not the only situations

18  constituting good cause, they are the most common.  Id.  "Notice and comment is 'impracticable' when

19  the agency cannot both follow section 553 and execute its statutory duties . . . . [and] 'unnecessary'

20  when the regulation is technical or minor." Riverbend Farms, Inc. v. Madigan, 958 F.2d 1479, 1484

21  (9th Cir. 1992) (internal quotations omitted).  "Furthermore, 'contrary to the public interest'

22  supplements these terms and requires that public rule-making procedures shall not prevent an agency

23  from operating." Id. (internal quotations omitted).  For example, in Hawaii Helicopters, the Ninth

24  Circuit held that the Federal Aviation Administration ("FAA") had good cause to forego notice and

25  comment procedures regarding its special operating rules for airplane and helicopter tour operators in

26  Hawaii, because of the threat to public safety posed by increasing helicopter air tour accidents.  Id. at

27  214.

28  ///

The Attorney General included the following statement of good cause for the interim rule:

> The rule specifies that the requirements of the Sex Offender Registration and Notification Act apply to all sex offenders (as defined in that Act), including those convicted of the offense for which registration is required prior to the enactment of the Act.  The applicability of the Act's requirements promotes the effective tracking of sex offenders following their release, by means described in sections 112-17 and 119 of the Act, and the availability of information concerning their identities and locations to law enforcement and members of the public, by means described in sections 118 and 121 of the Act.
>
> The immediate effectiveness of this rule is necessary to eliminate any possible uncertainty about the applicability of the Act's requirements--and related means of enforcement, including criminal liability under 18 U.S.C. [§] 2250 for sex offenders who knowingly fail to register as required--to sex offenders whose predicate convictions predate the enactment of SORNA.  Delay in the implementation of this rule would impede the effective registration of such sex offenders and would impair immediate efforts to protect the public from sex offenders who fail to register through prosecution and the imposition of criminal sanctions.  The resulting practical dangers include the commission of additional sexual assaults and child sexual abuse or exploitation offenses by sex offenders that could have been prevented had local authorities and the community been aware of their presence, in addition to greater difficulty in apprehending perpetrators who have not been registered and tracked as provided by SORNA.  This would thwart the legislative objective of "protect[ing] the public from sex offenders and offenders against children" by establishing "a comprehensive national system for the registration of those offenders," SORNA § 102, because a substantial class of sex offenders could evade the Act's registration requirements and enforcement mechanisms during the pendency of a proposed rule and delay in the effectiveness of a final rule.
>
> It would accordingly be contrary to the public interest to adopt this rule with the prior notice and comment period normally required under 5 U.S.C. [§] 553(b) or with the delayed effective date normally required under 5 U.S.C. [§] 553(d).

72 Fed. Reg. 8894, 8896-8897 (codified in 28 C.F.R. Part 72).

Here, the Attorney General's statement provides substantial justification for promulgating the interim rule without notice and comment procedures.  The court could not find a case which has held that the Attorney General violated the APA by his decision to promulgate SORNA regulations without prior public notice or comment.  As one district court observed:

> [T]he Attorney General has gone to great lengths to proffer an appropriate rationale for its decision to set aside the notice and comment requirements. . . . Indeed, it would be difficult to conjure up more compelling reasons than protecting the public from sex offenders and preventing "additional sexual assaults and child sexual abuse or exploitation offenses" to invoke the good cause exception.

31

1    Shenandoah, 572 F.Supp.2d at 574; see also Gould, 526 F.Supp.2d at 546; Senogles, 570 F.Supp.2d at

2    1151-52; Torres, 573 F. Supp. 2d at 945. The Attorney General did not violate the APA by

3    promulgating the interim rule without prior notice or comment.

4         **7.    Tenth Amendment**

5         Burkey asserts § 2250 is an improper exercise of federal power over the states in violation of the

6    Tenth Amendment.  Burkey acknowledges that states are not required to implement SORNA under the

7    statute, because SORNA only offers states financial incentives to adopt SORNA-compliant registries.

8    However, if this court finds that SORNA's registration requirements are currently in effect, Burkey

9    argues that state officials would be forced to register sex offenders pursuant to SORNA before their

10   states had enacted SORNA registration systems, which would violate the Tenth Amendment.  The

11   government claims § 2250 does not compel *states* to adopt registration systems in compliance with

12   SORNA, but only requires *sex offenders* to register and update their registration when they travel in

13   interstate commerce.  According to the government, SORNA does not impose any additional

14   obligations on sex offenders, such as Burkey, who are already required to register in their states, nor

15   does SORNA require states to do anything more than what each state already does under its current sex

16   offender registration laws.

17        The Tenth Amendment to the U.S. Constitution reserves all powers not delegated to the federal

18   government to the states and precludes the federal government from compelling the states or state

19   officials to enact or administer federal law.  Printz v. United States, 521 U.S. 898, 935 (1997).  SORNA

20   does not require states to implement SORNA compliant registry systems.  Rather, it offers the states

21   financial incentives to create them.  42 U.S.C. §§ 16924, 16925(d).  It is clear that Congress did not

22   violate the Tenth Amendment by giving states financial incentives to bring their individual sex offender

23   registration systems in compliance with SORNA's registration requirements.  See Waybright, 561

24   F.Supp.2d at 1168-69 (citing South Dakota v. Dole, 483 U.S. 203 (1987) (discussing Congress'

25   spending power)); Vadaro, 575 F.Supp.2d at 1185; Gagnon, 574 F.Supp.2d 172, 197.  Moreover, a

26   number of courts have held that a sex offender who is required to register under state law has no

27   standing to raise a Tenth Amendment claim.  See Waybright, 561 F.Supp.2d at 1168-69 (finding the

28   defendant did not have standing to assert a Tenth Amendment claim because he had "not suffered any

1    injury as a result of Congress' alleged commandeering of state officials." ); accord Vardaro, 572

2    F.Supp.2d at 570; Gagnon, 574 F.Supp.2d at 179.

3                    **8.    Right to Travel**

4          Burkey claims § 2250 burdens his constitutional right to interstate travel without a compelling

5    state interest because the statute subjects sex offenders to federal prosecution for exercising their right

6    to travel and failing to register or update their registration.  The government responds that several courts

7    have rejected similar challenges to sex offender registration laws based on the right to travel, including

8    Doe v. Smith, 538 U.S. 84; Doe v. Miller, 405 F.3d 700 (8th Cir. 2005); Doe v. Moore, 410 F.3d 1337

9    (11th Cir. 2005); Cutshall v. Sunquist, 193 F.3d 466 (6th Cir. 1999).  Courts have also held that sex

10   offender registration requirements are burdensome but not unreasonable, Moore, 410 F.3d at 1348, and

11   that laws which qualify the right to travel after unlawful conduct are constitutional.  Jones v. Helms,

12   452 U.S. 412, 420-23 (1981).  Furthermore, the government states Burkey's right to travel is only

13   burdened if he chooses to violate the law.

14         The right to travel from one state to another is a fundamental right derived from the Privileges

15   and Immunities Clause of the 14th Amendment.  Saenz v. Roe, 526 U.S. 489, 501 (1999); Miller v.

16   Reed, 176 F.3d 1202, 1205 (9th Cir. 1999).  A statute that unreasonably burdens the right to travel is

17   subject to strict scrutiny and will be struck down as unconstitutional "unless shown to be necessary to

18   promote a compelling governmental interest."  Memorial Hosp. v. Maricopa County, 415 U.S. 250,

19   262 (1974), (internal quotations omitted).  However, when the right to travel is implicated but not

20   unreasonably burdened, the statute need only be rationally related to a legitimate governmental interest

21   to pass constitutional muster.  See Walsh v. City and County of Honolulu, 423 F.Supp.2d 1094, 1102,

22   1104 (D. Haw. 2006) (citing Martinez v. Bynum, 461 U.S. 84, 87 (1983)).

23         Sex offenders traveling from state to state may still do so freely without first seeking permission

24   from authorities.  The inconvenience of updating one's registration upon traveling interstate is also

25   justified in light of the purpose behind the registration requirements.  Faced with a Florida statute with

26   similar registration requirements, the court in Moore stated,

27              The state has a strong interest in preventing future sexual offenses and
                alerting local law enforcement and citizens to the whereabouts of those that
28              could reoffend.  Without such a requirement, sex offenders could legally

                                              33

> subvert the purpose of the statute by temporarily traveling to other jurisdictions for long periods of time and committing sex offenses without having to notify law enforcement.

Moore, 410 F.3d at 1349.

As the Shenandoah decision held, "SORNA does not prevent sex offenders from traveling in interstate commerce or from relocating to other states, but merely requires them to notify law enforcement officials when they do so. Id. at 571 (citing Waybright, 561 F.Supp.2d at 1169-70); accord Senogles, 2008 WL 3200178 at *8. The court agrees with those courts which have found that the federal government has a compelling interest in preventing sex offenses by keeping track of the whereabouts of sex offenders. However, at a minimum, SORNA is rationally related to a legitimate government interest in tracking sex offenders as they move in interstate commerce so that they do not subvert state registration requirements by traveling to other jurisdictions without notifying local law enforcement. The court rejects Burkey's argument that this right to travel has been unlawfully burdened and finds § 2250 does not violate his right to travel.

For all of the foregoing reasons,

**IT IS THE RECOMMENDATION** of the undersigned United States Magistrate Judge that defendant John Michael Burkey's Motion to Dismiss Count Two [sic] of the Indictment (Dkt. #23) be DENIED.

Dated this 24th day of February, 2009.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE

34